STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

Presented on behalf of Plaintiff,
BENJAMIN SCHONBRUN

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **BENJAMIN SCHONBRUN,**<br><br>Plaintiff,<br><br>v.<br><br>**SNAP, INC.** (formerly known as Snapchat); **CNA FINANCIAL CORPORATION, CONTINENTAL CASUALTY COMPANY** (collectively, "CNA"); **HANASAB INSURANCE SERVICES, INC.;** **CITY OF LOS ANGELES, ERIC MICHAEL GARCETTI, MICHAEL JOSEPH BONIN**; and **UNKNOWN NAMED DEFENDANTS 1-10,**<br><br>Defendants. | **COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff makes the following allegations, on information and belief, in support of this Complaint:

## JURISDICTION AND VENUE

1.  Plaintiff asserts diversity of citizenship claims against defendants as defendants and plaintiff are citizens of different states and therefore this court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1),  since the matter in controversy

1  exceeds the sum or value of $75,000, exclusive of interest and costs, and also

2  asserts his state law claims based on supplemental jurisdiction, under 28 U.S.C. §

3  1367; jurisdiction also is based on 28 U.S.C. § 1331, as a federal civil RICO claim

4  is asserted.

5      2. Defendants did both general business and case-specific business in

6  California, plaintiff is a domiciliary and citizen of the State of New York, the

7  matters that are the bases for this action occurred in Los Angeles County,

8  California, and therefore venue lies in the United States District Court for the

9  Central District of California, and in its Western Division, pursuant to 28 U.S.C. §

10  1391.

11                          **THE PARTIES**

12      3. Plaintiff  is BENJAMIN SCHONBRUN[1] (hereinafter "Schonbrun" or

13  "plaintiff")  and defendants are SNAP, INC. (formerly known as Snapchat); CNA

14  FINANCIAL CORPORATION and CONTINENTAL CASUALTY COMPANY

15  (collectively, "CNA"); HANASAB INSURANCE SERVICES, INC.; CITY OF

16  LOS ANGELES[2], ERIC MICHAEL GARCETTI, MICHAEL JOSEPH BONIN,

17  both sued in their individual and official capacities; and, UNKNOWN NAMED

18  DEFENDANTS 1-10, (hereinafter, collectively, "defendants"), and Unknown

19  Named Defendants 1-10, who are persons and/or entities whose true names

20  presently are unknown and who may have engaged in some conduct that is

21  culpable with respect to plaintiff, as set forth hereinbelow.

22  //

23  //

24          **ALLEGATIONS COMMON TO EACH COUNT**

25

26  _____

27  [1] Plaintiff Schonbrun presently owns all of the right, title, and interest in the
subject property and of all the causes of action and claims set forth herein.

28  [2] A damages claim duly and timely was submitted to the City.

2

4.  Each and every allegation set forth in each and every averment of this pleading hereby is incorporated by this reference in each and every other averment and allegation of this pleading.

5.  Plaintiff and defendant SNAP entered into a written contract, whose terms are set forth in full in Exhibit 1 hereto, and whose terms hereby are incorporated herein by this reference.

6.  At the time of entry into this agreement, defendant SNAP agreed to lease from plaintiff the premises known as 723 Ocean Front Walk, Venice, California 90291, for the period March 28, 2017 to March 27, 2022, and to insure and to indemnify plaintiff, as set forth in that contract.

6.  In Sept. 2018, SNAP vacated the premises and ceased maintaining the premises, as it was obligated to do under the lease agreement, thus abandoning both the premises and their legal duties and responsibilities under the terms of the lease contract.

7.  Under the terms of the lease contract, SNAP had legal duties and responsibilities, *inter alia*, which it breached, at least as follows:

>6.1[3].  Use:  Lessee shall not use or permit the use of the Premises in a manner that is unlawful, creates damage, waste, or a nuisance, or that disturbs occupants of or causes damage to neighboring premises or properties.

>7.  Maintenance; Repairs  Lessees Obligations:  Lessee shall at Lessee's sole expense in keeping the Premises in good order, condition and repair, shall exercise and perform good maintenance practices, specifically including the procurement and maintenance of the service contracts required by 7.1 below

---

[3] The numbers used to identify the duties had and which were breached refer to the numerical clauses in the lease agreement.

Lessee shall during the term of the lease, keep the exterior appearance of the building free from graffiti consistent with the exterior appearance of other similar facilities of comparable age and size in the vicinity

8.  SNAP breached its duty to keep the exterior of the building free from graffiti.  SNAP duly was notified of this breach, and failed and refused to cure it, and would paint over the graffiti with paint that did not match the surrounding exterior paint color, thus further defacing the building.

9.  Under the terms of the lease contract, SNAP also had legal duties and responsibilities, *inter alia*, which it breached, as follows:

>8.2[4]  Liability Insurance:   SNAP thus far has refused to provide the insurance policy information, and, on information and belief, failed to comply with the term of the lease contract that required SNAP properly to insure the premises, to protect both the plaintiff and itself.

>8.2(a)  Carried by Lessee.  Lessee shall obtain and keep in force a Commercial General Liability policy of insurance protecting Lessee and Lessor as an additional insured, insured against claims for bodily injury, personal injury and property damage based upon or arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto.  Such insurance shall be on an occurrence basis providing single limit coverage in an amount not less than $5,000,000 per occurrence with an annual aggregate of not less than $10,000,000.

>41  Security Measures:  Lessee assumes all responsibility for the protection of the Premises, Lessee, its agents and invitees and their property from the acts of third parties.

---

[4] *Ibid.*

10. On Jan. 13, 2021, the unoccupied and abandoned (by SNAP) building burned down.

11. A cause of the conflagration was that the homeless encampment that was permitted to exist and remain adjacent to the building by defendants SNAP, the CITY, GARCETTI, and BONIN, and some UNKNOWN NAMED DEFENDANTS, and some acts of the encampments inhabitants contributed to causing the fire that burned down the building, and the building was a total loss.

12. CNA/CONTINENTAL CASUALITY COMPANY issued a policy of insurance that insured the building. Exhibit 2 hereto.

13. The building was seriously under-insured, for which defendants SNAP, CNA, and HANASAB INSURANCE SERVICES, INC. each and all, principally, jointly, and severally, all are liable.

14. SNAP is liable for all of plaintiff's out-of-pocket costs and expenses, including plaintiff's servicing of plaintiff's bank loans and the construction costs to build out the property to its highest and best uses.

15. In about June 2020, the fire insurance on the building had a policy limit of $1.45 million to replace the building.

16. At that time, plaintiff requested from defendant HANASAB that the policy coverage limit be increased to $5 million.

17. HANASAB stated that CNA stated that the replacement value was $1.85 million, but that it would insure the building for $2 million.

18. Within six months, the building burned down, and CNA informed plaintiff that it would cost $2.5 million to replace the building.

19. CNA's adjuster admitted to plaintiff that $2.5 million was insufficient to replace the building.

20. Both CNA and HANASAB were negligent and acted in bad faith in providing coverage of only $2 million.

21.  Defendants GARCETTI and BONIN were on due notice regarding the homeless encampment adjacent to and abutting the building and refused and failed to take any action to alleviate that encampment, which constituted both a private and a public nuisance.

22.  Once SNAP had abandoned the building, SNAP ceased having their private security force/patrol keep the building safe and secure, ceased enforcing the "No Trespassing" signs, and thus materially breached the lease agreement.

23.  SNAP permitted a homeless encampment to begin and to continue immediately adjacent to and abutting the building, and SNAP took no action to keep the building safe, and the homeless encampment became more entrenched and permanent, and its occupants began to secure their tents and other belongings to the ground floor bars (over, and protecting the windows of the building), with bungee cords and in other manners.

24.  Plaintiff regularly notified defendants SNAP, GARCETTI, and defendant BONIN, and the LAPD of the matters set forth hereinabove, with respect to the homeless encampment and its potential negative consequences to the building, to no avail.

25 . Defendants, except the City defendants, did not intend to insure or to indemnify plaintiff.

26.  These defendants' representations that they would insure were materially false, were intended to be misleading, were misleading, it was intended that plaintiff would rely on them, plaintiff did rely on them, and all of this caused plaintiff to be harmed and damaged.

27.  In reliance on these defendants' representations, plaintiff entered into both the lease with SNAP and the contracts of insurance with CNA and HANASAB, and paid insurance premiums to CNA and commissions to HANASAB.

28.  Plaintiff timely reported a policy claim to defendants CNA and HANASAB.

29.  These defendants failed and refused properly and timely to pay plaintiff's claims at their full value, and to indemnify plaintiff for all of the losses and their attendant consequences to plaintiff.

30.  Plaintiff  was injured and damaged by these defendants' failures and refusals to pay the full value of plaintiff's claims.

31.  At the time that the non-City defendants entered into the contracts with plaintiff, defendants knew that their representations both in the lease and to insure and to indemnify plaintiff were false.

32.  Defendants intended to induce plaintiff  to enter into the lease contract and the contract of insurance, so that plaintiff would lease the property and pay the premium to defendants.

33.  Plaintiff reasonably and detrimentally relied on these defendants' representations that defendants would carry out the lease's provisions and insure plaintiff's interests and indemnify plaintiff were plaintiff to incur a covered loss.

34.  Plaintiff was harmed both by his reliance on defendants' misrepresentations and by plaintiff causing money to be paid to defendants, the premium, as well as by defendants refusing to pay for the covered loss.

35.  When plaintiff filed his claim of loss, defendants made further misrepresentations that they would pay and indemnify for the loss, and then failed and refused to do so, thus inducing plaintiff not to file sooner the instant action.

36.  Having devised or intending to devise a scheme or artifice to defraud or for obtaining money by means of false or fraudulent pretenses, representations, or promises, defendants, other than the City defendants, transmitted or caused to be

transmitted by means of wire and/or United States mails[5], in interstate commerce, writings and words for the purpose of executing their scheme or artifice, as follows:

37.  Plaintiff is ignorant of the names of the persons who made these transmissions, except that he knows they were issued by the non-City defendants as companies.

38.  Pursuant to Cal. Civ. Code § 2338, all defendants who are principals are responsible to plaintiff for any tortious conduct, both willful and negligent, of their agents, to fulfill the obligations of such principal.

39.  Pursuant to Cal. Civ. Code § 2343, all defendants who are agents and who assume to act as agents are responsible to plaintiff as is their principal for her or his acts in the course of such agency, when with her or his consent, credit is given to her or him personally in a transaction, and when she or he enters into an agreement in the name of her or his principal, without believing, in good faith, the she or he has authority to do so, or when her or his acts are wrongful in nature.

40.  Pursuant to Cal. Gov't Code § 815.2, all public entity defendants, *i.e.* defendants CITY, GARCETTI,  and BONIN, in their official capacities only, are liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of her or his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or her or his personal representative.

41.  Pursuant to Cal. Gov't Code § 820, a public employee is liable for injury caused by her or his act or omission to the same extent as a private person.

42.  Pursuant to Cal. Gov't Code § 835, a public entity is liable for injury caused by a dangerous condition on its property if a plaintiff establishes that the

---

[5] All events are by wire and/or mail unless indicated to have been by telephone.

property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that a negligent or wrongful act or omission of an employee of the public entity within the scope of her or his employment created the dangerous condition or the public entity had actual or constructive notice of the dangerous condition under § 835.2, a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

43.  Pursuant to Cal.  Gov't Code § 840.2, an employee of a public entity is liable for injury caused by a dangerous condition of public property if the plaintiff establishes that the property of the public entity was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either the dangerous condition was directly attributable wholly or in substantial part to a negligent or wrongful act of the employee and the employee had the authority and the funds and other means immediately available to take alternative action which would not have created the dangerous condition, or the employee had the authority and it was her or his responsibility to take adequate measures to protect against the dangerous condition at the expense of the public entity, and the funds and/or other means for doing so were immediately available to her or him, and she or he had actual or constructive notice of the dangerous condition under  § 840.4 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

44.  Plaintiff's state law claims are asserted as both diversity jurisdiction and supplemental claims, under 28 U.S.C.  § 1367.

45.  Having devised or intending to devise a scheme or artifice to defraud or for obtaining money by means of false or fraudulent pretenses, representations, or promises, defendants transmitted or caused to be transmitted by means of wire and/or United States mail[6] in interstate commerce writings and words for the purpose of executing their scheme or artifice.

46.  All acts and/or omissions perpetrated by each defendant were engaged in fraudulently, coercively, maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, and with evil motive and/or intent, and in disregard of the rights of plaintiff.

## COUNT 1
### (Breach of Written Agreement)

45.  By doing the things alleged hereinabove, defendants SNAP, CNA, and HANASAB materially breached their various written agreements with plaintiff, plaintiff was injured and damaged by defendants' breaches, and plaintiff is, therefore, entitled to recover damages from these defendants, and each of them, for breach of a written agreement.

## COUNT 2
### (Fraud)

46.  By doing the things alleged hereinabove, defendants SNAP, CNA, and HANASAB committed fraud, both fraud in the factum and fraud in the treaty, by making material misrepresentations that were false that plaintiff properly was insured and that, were plaintiff to make a valid claim on his policies of insurance, that such claims would be paid, they intended plaintiff to rely on those misrepresentations, plaintiff justifiably relied on them, plaintiff was harmed and damaged by his reliance, and these defendants, therefore, are liable to plaintiff for damages for tortious breach of written agreement.

---

[6] All events are by wire and/or mail unless indicated to have been by telephone.

47.-99.  Reserved.

## COUNT 4
### (Insurance Bad Faith)

100.  By their conduct, all of the non-City defendants engaged in a scheme of insurance bad faith.

101.  By doing and failing to do each of the things set forth hereinabove, these defendants each and all breached their duties of good faith and of fair dealing to plaintiff, and thereby injured and damaged plaintiff.

102.-199.  Reserved.

## COUNT 5
### (Nuisance)

200.  California has defined a public nuisance as "[a]nything which is injurious to health, including, but not limited to . . . an obstruction of the free use of property, so as to interfere with the comfortable enjoyment of life and property, or [which] interfere[s] with the comfortable enjoyment of life or property, in the customary manner, of any . . . street, or highway, is a nuisance," and which affects the entire community or neighborhood and/or a considerable number of persons, and plaintiff suffered a special injury over and above that suffered by the general public.

201.  A nuisance claim "is plainly aimed at protecting the public," including plaintiff, "from the hazards created by public nuisances," and a public nuisance is the substantial, unreasonable interference with a public right, and the homeless encampment described hereinabove was a public nuisance, as defined by Cal.  Civ. Code § 3479.

202.   As set forth hereinabove, defendants CITY, GARCETTI, BONIN, and SNAP, by their failures to maintain the public property under their control -- the sidewalks and public property around, adjacent to, and abutting plaintiff's property,

perpetrated, condoned, ratified and supervised a public nuisance, and facilitated public nuisance violations.

203.  The acts and omissions of these defendants were knowing, intentional, and unreasonable, or unintentional but negligent and/or reckless, and the sidewalk condition permitted to exist was the result of their conduct or omissions and/or was an abnormally dangerous activity which substantially interfered with plaintiff's right to use and to enjoy his property, so that any ordinary person would be reasonably annoyed by or disturbed by.

204.  Plaintiff experienced a substantial and unreasonable interference with his rights, by reason of its physical conditions adjacent to his property, and was prevented from using his own property, over which these defendants had control, and has suffered and continues to suffer, and continues to be threatened with respect to his welfare and safety, by reason of these defendants' wrongful conduct, and plaintiff has been injured and damaged, and continues to be injured and damaged, and plaintiff did not consent to these defendants' acts and/or omissions.

## COUNT 6
(Violation of California Environmental Quality Act
("CEQA"), against all City defendants)

205.  The California Environmental Quality Act, Cal. Pub. Res. Code § 21001(d) ("CEQA") requires that local governments must consider environmental implications of their actions in order to "[e]nsure that long term protection of the environment . . . shall be the guiding criterion in public decisions."

206.  CEQA may be applied to sidewalks in California, and a decision not to ameliorate a bad condition on a sidewalk is a part of a discretionary project that is proposed to be carried out or approved by a public agency with jurisdiction thereof.

207. A decision not to repair a project -- here, sidewalk and public areas, requires governmental approval, and a CEQA approval was required for the City

defendants to permit the homeless encampment outside plaintiff's building to continue.

208. By their actions and/or omissions, the City defendants failed to ensure the protection of the environment and ignored the legal fact that environmental protection should have been and should be the guiding criterion of their public decisions, to leave in its un-repaired condition the sidewalk outside plaintiff's building.

209.-240.  Reserved.

### COUNT 7
### (Racketeer Influenced and Corrupt Organizations, RICO, 18 U.S.C.  § 1961, *et seq*.)

241.  By doing the things alleged hereinabove, the non-City defendants thereby committed wire fraud and mail fraud, by using instrumentalities of interstate commerce to accomplish their crimes, and thereby are liable under the civil RICO statutes.

242.  Each defendant, in its own right, and all defendants are, together, collectively, as well as their employees, who work in and for each defendant company, both enterprises and associated-in-fact enterprises, within the meaning of 18 U.S.C.  § 1961(4), and therefore are RICO enterprises.

243.   As regards the dealings alleged in the instant action, each different company is, and the companies that are defendants together are, an enterprise(s), within the meaning of 18 U.S.C. § 1961(4).

244.  Each company defendant's activities affect interstate commerce.

245.  Each defendant received income, directly and/or indirectly, by way of insurance premiums, salary, compensation, reimbursement for expenses, *per diem* costs reimbursements, meals, lodging, and/or travel, *etc.,* from the pattern of racketeering activity alleged herein and used that income in the acquisition of an interest in and/or operation of the enterprise, in violation of 18 U.S.C. 1962(a), and

acquired and/or maintained control over said racketeering enterprise through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. 1962(b).

246.  Defendants conducted and/or participated in said enterprises' affairs through a pattern of racketeering activities, in violation of 18 U.S.C. § 1962(c).

247.  The pattern of racketeering activities included a continuous pattern and practice potentially involving activities, including any potential civil RICO predicates, set forth in the RICO predicate statutes, including extortion, mail fraud, wire fraud, fraudulent concealment, fraud, and potentially obstruction of justice, and defendants' defense of the instant action is a continuation and a part of its RICO schemes.

248.  On information and belief, the enterprises' activities have occurred on more than one and on many occasions over at least the past 10 years and have been done on numerous occasions and constitute at least two separate acts, as set forth hereinabove, not including the acts included as part of the defense of the instant action that have not yet occurred.

249. The wrongful acts described in the matters enumerated hereinabove occurred over a significant period of time, and are related in that they evidence civil RICO predicates, including at least fraud, wire fraud, mail fraud, and obstruction of justice, and they pose a threat of continued criminal activity, have the same or similar purposes, results, participants and kinds and categories of participants, victims, methods of commission, and are otherwise interrelated by their common characteristics, are not isolated events, and each and all constitute a continuing pattern of racketeering activity and constitute a long term threat of continuing racketeering activity.

250. These wrongful acts over a period of years and the bad acts alleged hereinabove enabled defendants to acquire and maintain, both directly and

indirectly, interests in and control of the racketeering enterprises in which they engage.

251.  The activities led to defendants' control and acquisition over the enterprises and resulted in the injuries to plaintiff, as alleged herein, which resulted from defendants' participation in and control of the enterprises.

252.  By failing to prevent the wrongful conduct herein alleged, misconduct that amounted to racketeering activities, all managerial and non-managerial employees and/or officers of defendants engaged in and condoned racketeering activities, and perhaps their attorneys in the instant action, and when the names of the managerial and non-managerial persons, presently Unknown Named Defendants are obtained, the names of those persons will be added as defendants.

253.  The willful and/or negligent mismanagement of the enterprises , with knowledge by defendants charged with management and potentially other defendants that they were and continue to be operated as a RICO enterprises, directly caused the harm to plaintiff, as alleged herein.

254.  The acquisition of control of the enterprises by its participants who engaged in RICO predicate acts harmed plaintiff.

55. The enterprises are RICO enterprises because they have hierarchical structures and consensual structures for making decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision-making exist separate and apart from the racketeering activities.

256.  Plaintiff was harmed in that his property, to wit, his building, his money and money in which he had an interest, was subjected to, affected by, and its value affected negatively by defendants' wrongful conduct, including fraud, wire fraud, mail fraud, deception, and obstruction of justice.

257.  Both directly and indirectly, defendants, in the acts and instances alleged herein, and others, have conducted the RICO enterprises' affairs and have, as a matter of fact, participated in the operation and *de facto* management of the RICO enterprises.

258.  By the conduct alleged herein, each defendant participated in the operation and management of the RICO enterprises herself and/or himself and/or itself, or played some part in directing their affairs.

259.  Plaintiff was injured in his property by reason of the conduct against him, as set forth hereinabove.

260.  Plaintiff has suffered a material diminution in the value of his property, to wit, his building, his money, or money in which he had an interest.

261.  Defendants unlawfully engaged in the racketeering activities set forth in the preceding averments and, on information and belief, on other occasions during the past 10 years, through a pattern of racketeering activity, and acquired, directly and indirectly, control of the enterprises.

262.  Defendants and others, who either are or have been employed by or who are associated with the racketeering enterprises, have conducted those enterprises through a pattern of racketeering activity, as set forth hereinabove.

263.  Through a pattern of racketeering activities, as set forth hereinabove, defendants acquired and/or maintained, directly and/or indirectly, interests in and/or control of the RICO enterprises and their activities by, among other things, their own aggrandizement that flows therefrom.

264.  By virtue of the allegations set forth hereinabove, some defendants were or are employed by, all defendants were or are associated with, and all defendants participated in, directly and/or indirectly, the RICO enterprises.

265.  Defendants unlawfully conspired with others to violate the provisions of 18 U.S.C. § 1962(b), (c), and (d), and, on information and belief, continued to do so with the aid and assistance of co-conspirators

266.  Plaintiff was injured in his property by reason thereof, and plaintiff is entitled to damages, to be trebled.

267.  The wrongful policies and practices of defendants relating to the solicitation, sale, and processing of policies of insurance include, but are not limited to, the deliberate failure to make honest and truthful disclosures and of making material misrepresentations, and have been formulated and implemented by defendants, both singly and jointly.

268.  Defendants' actions involve thousands of consumers and constitute a pattern of racketeering activity and the predicate acts of wire fraud and mail fraud, in violation of 18 U.S.C. § 1343.

**COUNT 8**
(Insurance Bad Faith, Conspiracy)

269.  By their conduct, the non-City defendants engaged in a scheme of insurance bad faith, and conspired to do so, by having an agreement and/or understanding to accomplish the wrongful things alleged herein.

270.  By doing and failing to do each of the things set forth hereinabove, defendants each and all breached their duties of good faith and of fair dealing to plaintiff and thereby injured and damaged plaintiff, by conspiring to do so.

**COUNT 9**
(Fraud by Concealment)

271.  By their actions as set forth hereinabove, defendants SNAP, CNA, and HANASAB engaged in fraud by concealment.

//

//

//

17

**COUNT 10**
(Constructive Fraud)

272.  Fiduciary relationships were established between plaintiff, on the one hand, and defendants SNAP, CNA, and HANASAB, on the other hands, for the purposes of properly providing security for the building (SNAP) and insuring the subject property (SNAP, CNA, and HANASAB), and under those fiduciary relationships, these defendants thereby owed fiduciary duties of care, loyalty, and good faith to plaintiff and, among other things to treat plaintiff with reasonable diligence and act in plaintiff's best interests.

273.  Plaintiff duly relied on these fiduciary relationships and their requirements, and had plaintiff been informed of or and aware of these defendants' misfeasances, plaintiff would have terminated  his relationships and obtained different persons with whom to do business, and to provide security to the building and insurance for the building.

274.  These defendants' non-disclosures of their not having provided sufficient security for the building and of not providing sufficient and appropriate insurance coverage for the building proximately and substantially caused plaintiff to suffer significant harm in an amount in excess of $75,000, excluding interest and costs.

275.  In addition, under the "tort of another" doctrine, plaintiff suffered damages in the form of financial losses, time, attorneys' fees, and other expenditures incurred in consequence of defendants' wrongful conduct, which constitutes constructive fraud.

**COUNT 11**
(Aiding and Abetting Others' Acts)

276.  By virtue of all of the wrongful conduct set forth herein, each defendant aided and abetted all of each others' wrongful acts, and each defendant is liable therefor.

**COUNT 12**
(Conspiracy)

277.  Each defendants agreed and/or understood all of the things alleged herein to be wrongful, and each and all of them are liable for conspiracy to engage in each others' wrongful conduct, and knowingly and willfully agreed and conspired to damage plaintiff and his legal and economic interests.

278.-299.  Reserved.

**CLASS ACTION ALLEGATIONS**

300. Plaintiff is a member of the discrete class of persons whose defining characteristic is that its members were insureds under agreements of insurance to insure for and to indemnify against risks of property damage and who were insured by defendants, who submitted claims on the policies of insurance, who were under-insured, whose just claims were not paid in the proper amount.

301. This class contains over 100 members, and the class is so numerous so that joinder of all members is impracticable.

302. Because only defendants know the names of all of the members of class and defendants are the only persons who have information sufficient to identify all the members of class it is impracticable to join all the members of the class in this action.

303. There are only common questions of fact and law with respect to all class members, which are whether they are insureds, whether they made claims, and whether their claims were not paid.

304. The claim made by the representative party, plaintiff, is typical of the claims of each class member.

305. The representative of the class, plaintiff, fairly, vigorously, and zealously will represent and adequately protect the interests of all class members.

306. Prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to class members, which would establish incompatible standards for parties opposing the class, and defendants have acted and will continue to act on grounds generally applicable to every class member, and the class questions not only predominate but are the only questions that exist.

307. Therefore, this action is maintainable under F.R. Civ. P. Rule 23(a), & (b)(1)(A),(B)(1),(2), and (3).

308. It is not presently possible accurately to measure the size of the class.

309. The nature of the notice to be provided to class members should be as follows:  defendants should be required to identify all insureds whose claims were denied and to provide a suitable notice to all class members.

**WHEREFORE**, plaintiff requests relief against defendant as follows:

1.  General damages to be determined in a sum exceeding $75,000.00, and of $8,000,000.00, exclusive of interest and costs;

2.  Punitive damages in a sum to be determined by a jury, and as a percentage of the net worth and yearly profits of defendants, in a sum sufficient to deter future misconduct, and not less than $1,000,000.00;

3.  The trebling of all damages for the RICO violations;

4.  Costs of suit;

5.  Attorneys' fees, only if there is class certification and Mr. Reichmann appears at the time of certification, for services rendered thereafter;

6.  Interest;

7.  Injunctive relief that defendants properly pay claims that are valid and not refuse to pay claims that are valid and engage only in fair claims practices; and,

8.  Such other relief as is just and proper.

//

1

**JURY DEMAND**

2

Plaintiff demands trial by jury of all issues.

3

4

**YAGMAN + REICHMANN, LLP**

5

6

By: _____

7

**STEPHEN YAGMAN**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28