AMNON Z. SIEGEL (State Bar No. 234981)
asiegel@millerbarondess.com
ADAM M. AGATSTON (State Bar No. 325114)
aagatston@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 552-4400
Facsimile:   (310) 552-8400

Attorneys for Defendant
SNAP INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BENJAMIN SCHONBRUN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SNAP INC. (formerly known as Snapchat); CNA FINANCIAL CORPORATION, CONTINENTAL CASUALTY COMPANY (collectively "CNA"); HANASAB INSURANCE SERVICES, INC.; CITY OF LOS ANGELES, ERIC MICHAEL GARCETTI, MICHAEL JOSEPH BONIN; and UNKNOWN NAMED DEFENDANTS 1-10,<br><br>　　　　Defendants. | **CASE NO. 2:21-cv-07189 PSG(MRWx)**<br><br>**DECLARATION OF AMNON Z. SIEGEL IN SUPPORT OF DEFENDANT SNAP INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>[Filed Concurrently with Notice of Motion and Motion for Attorneys' Fees and Costs; and [Proposed] Order]<br><br>Date:　May 20, 2022<br>Time:　1:30 p.m.<br>Crtrm.:　6A<br><br>Assigned to: Hon. Philip S. Gutierrez<br>Magistrate Judge: Hon. Michael R. Wilner<br><br>Complaint Filed: September 8, 2021 |

# DECLARATION OF AMNON Z. SIEGEL

I, Amnon Z. Siegel, declare as follows:

1. I am an attorney duly admitted to practice before this Court. I am a partner with Miller Barondess, LLP, counsel of record for Defendant Snap Inc. ("Snap"). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify to all of said facts. I make this declaration in support of Defendant Snap Inc.'s Motion for Attorneys' Fees and Costs.

**Pre-Litigation Correspondence**

2. My firm was first retained by Snap in this matter in early February 2021, at which time no litigation had been commenced. Prior to my retention, Plaintiff, Benjamin Schonbrun, had sent correspondence to Snap relating to property in Venice that Snap had leased pursuant to a written lease agreement (the "Lease"), which had been destroyed in a fire in January 2021. Plaintiff's correspondence pointed to certain provisions of the Lease, including Section 8.2 regarding Snap's obligation to obtain general liability insurance, and included bizarre requests, such as copies of the last six months of Snap's utility bills at the property. Snap had initially communicated directly with Plaintiff but retained my firm to correspond with Plaintiff and respond to his inquiries.

3. My firm conducted a factual investigation, including talking to the client and reviewing the Lease and other key documents. I instructed an associate at my firm at the time, Jessica Newman, to conduct certain legal research relating to the issues in this matter and report back to me.

4. Based on our factual investigation and research, I came to believe that, under the terms of the Lease, Plaintiff/Lessor did not have any viable claims against Snap relating to the fire that destroyed the building.

5. My firm drafted a letter to Mr. Schonbrun on behalf of Snap and sent the letter to him on February 11, 2021, a true and correct copy of which is attached

hereto as **Exhibit A**.

6. My February 11, 2021 letter outlined why Plaintiff had no meritorious claims against Snap relating to the fire at the property: Plaintiff, not Snap, was required to obtain property insurance sufficient to cover the full insurable replacement costs of the subject premises; and pursuant to the waiver of subrogation clause (Section 8.6 of the Lease), any claim against Snap would necessarily fail because the parties released each other from any liability based on perils covered by insurance. These are the same arguments that the Court adopted (more than a year later) in its March 15, 2022 Order, granting Snap's motion to dismiss.

7. In my professional experience, our office spent a reasonable amount of time to research and draft our response to Plaintiff in early 2021, prior to litigation.

**The Original Complaint and Mediation Demand**

8. Plaintiff never responded to my February 11, 2021 letter. For seven months following the February 11, 2021 letter, nothing occurred on this matter from Snap's perspective. Then, on September 8, 2021, Plaintiff filed the original Complaint (Dkt. No. 1) in this case. Plaintiff's counsel at the time, Stephen Yagman, sent a letter to Snap, also dated September 8, 2021, seeking to mediate the claims asserted in the Complaint. A true and correct copy of Plaintiff's September 8, 2021 letter to Snap is attached hereto as **Exhibit B**.

9. Since my firm had represented Snap in this matter seven months earlier, Snap forwarded Mr. Yagman's letter to me, which attached a copy of Plaintiff's complaint, and asked me to respond to the letter and lawsuit. Since Ms. Newman was no longer with the firm, I instructed my colleague, Adam M. Agatston, to work with me on the matter.

10. On September 30, 2021, my firm sent a response letter to Plaintiff's counsel's September 8 letter. A true and correct copy of my September 30, 2021 letter to Plaintiff's counsel is attached hereto as **Exhibit C**. My letter included an analysis of all of Plaintiff's claims against Snap and demonstrated how they were

baseless in light of the terms of the Lease and applicable law.  The letter also informed Plaintiff that pursuant to the attorneys' fees provision in the Lease, Plaintiff would be liable to Snap for all attorneys' fees incurred in addressing Plaintiff's claims.  The letter advised Plaintiff that if he dismissed his claims against Snap with prejudice, Snap would agree not to pursue its fees and costs.  Given that there was no basis to sue Snap, Snap declined Plaintiff's request for mediation.

11.     In my professional experience, our office spent a reasonable amount of time to research and draft this response letter.

### The First Motion To Dismiss

12.     I sent a meet and confer letter to Plaintiff's counsel on October 13, 2021, regarding Snap's anticipated motion to dismiss the original Complaint.  A true and correct copy of this letter is attached hereto as **Exhibit D**.  In that letter, I reiterated that Plaintiff's claims against Snap were meritless and requested that Plaintiff dismiss Snap from the lawsuit.  I stated that "[b]y continuing to prosecute these meritless claims against Snap, [Plaintiff] is digging himself a deeper hole, as Snap will incur additional attorneys' fees and recover them from Plaintiff under the fee-shifting provision in the Lease." (Ex. D at p. 6.)

13.     On November 8, 2021, we filed Snap's first Motion to Dismiss, which included a 26-page memorandum of points and authorities, addressing all of Plaintiff's causes of action.  The hearing was noticed for December 6, 2021.  (Dkt. No. 15.)

14.     In my professional experience, our office spent a reasonable amount of time on the first Motion to Dismiss.

15.     Plaintiff did not file any opposition to Snap's first motion to dismiss, so on November 16, 2021, the Court granted the motion to dismiss with leave to amend.  (Dkt. No. 16.)

### The Second Motion to Dismiss

16.     On November 26, 2021, Plaintiff filed his First Amended Complaint

1  (FAC).  (Dkt. No. 17.)  Despite having been advised of the legal deficiencies in his
2  case, both through the meet and confer process and through the opportunity to
3  review the first round of Rule 12(b)(6) briefing, Plaintiff asserted the same meritless
4  claims against Snap and made few, if any, changes to his FAC.

5      17.    Because the FAC did not address the deficiencies in the original
6  Complaint, my firm drafted another meet and confer letter regarding our intention to
7  move to dismiss the FAC for failure to state a claim.

8      18.    We sent our meet and confer letter to Plaintiff's counsel on November
9  30, 2021, a true and correct copy of which is attached hereto as **Exhibit E**.  The
10  arguments identified in this meet and confer letter were carried over from our first
11  motion to dismiss.  I stated that "the defects in Plaintiff's claims against Snap cannot
12  be fixed by amendment" and advised Plaintiff's counsel again that "we will be
13  requesting dismissal of all claims against Snap with prejudice and seek recovery of
14  Snap's attorneys' fees."  (Ex. E at p. 1.)

15      19.    On December 21, 2021, I met and conferred with Plaintiff's counsel
16  telephonically.  Plaintiff's counsel refused to acknowledge the defects in the FAC,
17  necessitating Snap's filing of its second motion to dismiss.

18      20.    We filed Snap's Motion to Dismiss the First Amended Complaint on
19  January 10, 2022.  (Dkt. No. 30.)  On February 25, 2022, Plaintiff filed his
20  Opposition to Snap's Motion to Dismiss the First Amended Complaint.  Our office
21  filed Snap's Reply in Support of Motion to Dismiss the First Amended Complaint
22  on March 4, 2022.  (Dkt. No. 57.)

23      21.    In my professional experience, our office spent a reasonable amount of
24  time in connection with the Motion to Dismiss the First Amended Complaint.

25  **Plaintiff Files A Frivolous Sanctions Motion Against Me And My Firm**

26      22.    With respect to the second motion to dismiss, on January 19, 2022, the
27  Court (Hon. Virginia A. Phillips) ordered, pursuant to a stipulation submitted by the
28  parties, that Plaintiff's opposition to Snap's Motion to Dismiss the First Amended

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

Complaint was due on February 7, 2022. (Dkt. No. 34.) Upon transfer of this case to the Hon. Philip S. Gutierrez, the hearing on this motion was reset. (Dkt. No. 37.)

23. I mistakenly believed the opposition due date remained February 7, 2022, so when no opposition was filed by that date, I caused to be filed a notice of non-opposition on February 9. I mistakenly believed that the agreed-upon briefing schedule remained the same, notwithstanding the new hearing date.

24. Plaintiff's counsel, Mr. Yagman, called me the same day, informing me that the briefing schedule automatically changed with the hearing date under Local Rule 7-11, and aggressively threatened sanctions under Rule 11 and the Local Rules. I informed Mr. Yagman that I would immediately look into the issue.

25. Shortly after the call, I emailed Mr. Yagman and informed him that we would withdraw the mistakenly filed notice of non-opposition. Snap withdrew the notice on the same day. (Dkt. No. 40.) Approximately two hours elapsed on February 9, 2022, between the filing the notice of non-opposition and the withdrawal of the same.

26. Despite the foregoing, Plaintiff filed a sanctions motion *eight days later*, without any prior notice, seeking sanctions against me, Mr. Agatston and my firm. (Dkt. No. 45.)

27. Snap was required to respond substantively to this sanctions motion, which opposition was due three days after the Court's March 15, 2022 Order granting Snap's motion to dismiss. Snap had begun work on opposing this sanctions motion before the Court issued its March 15 Order and was uncertain whether that Order mooted Plaintiff's sanctions motion, so Snap proceeded to file its opposition to the sanctions motion on March 18, 2022. (Dkt. No. 60.)

28. The next day, on March 19, 2022, Plaintiff withdrew the sanctions motion. (Dkt. No. 62.)

29. In my professional experience, our office spent a reasonable amount of time on the opposition to the sanctions motion.

**The Court Dismisses Plaintiff's Claims With Prejudice**

30. On March 15, 2022, the Court issued its order granting Snap's Motion to Dismiss the FAC, dismissing Plaintiff's claims with prejudice. (Dkt. No. 59.)

31. The Court denied leave to amend, finding that "most if not all of Plaintiff's claims were frivolous" and there was "some evidence of bad faith" on the part of Plaintiff, because if he "had conducted a reasonable factual investigation in advance, he would have realized that his claims were entirely unsupported by the lease agreement and insurance policy he attached to his own complaint." (Dkt. No. 59 at 16.)

32. Snap's counsel tried repeatedly to inform Mr. Schonbrun of precisely these deficiencies in February 2021, and then again later that year to Mr. Schonbrun's counsel, Mr. Yagman, but to no avail.

## I. SNAP'S FEES FOR LITIGATING THIS MATTER WERE REASONABLE

### A. Miller Barondess' Hourly Rates Are Reasonable

33. I am lead counsel for Snap in this matter. My current standard hourly rate is $975 per hour (it was $950 per hour in 2021). I have been practicing law since 2004 after graduating from NYU School of Law. Prior to working at Miller Barondess, LLP ("MB"), I was practicing law at Gibson, Dunn & Crutcher. As lead counsel, I have taken multiple cases successfully to verdict, including, among others, a $256 million jury verdict on behalf of an automobile dealership group against Nissan Motor Acceptance Group. Representing the County of Los Angeles, I helped it secure a $120 million settlement against SoCalGas stemming from the largest natural gas leak in U.S. history at the Aliso Canyon Natural Gas Storage Facility in Porter Ranch. I have been recognized as a "Rising Star" or "Super Lawyer" by *Southern California Super Lawyers Magazine* every year since 2013. In 2018, the *Daily Journal* selected me as one of the "Top 40 Under 40" attorneys in California.

34. Jessica Newman was formerly an associate at MB and assisted me with the early, pre-litigation response to this matter in February 2021. Her standard hourly rate at the time was $625 per hour. Ms. Newman has been admitted to practice law in California since 2015. Prior to joining MB, Ms. Newman worked at Jeffer Mangels Butler & Mitchell LLP. Ms. Newman earned her BA, MA, and JD from Duke University. During law school, she was an editor of the Alaska Law Review and served as a judicial extern for the Hon. Eric C. Taylor of the Los Angeles Superior Court.

35. Adam Agatston is an associate at MB who was primarily assigned to this case. His standard hourly rate in 2021 was $625 per hour, and it is now $675 per hour. Prior to joining MB, Mr. Agatston worked in the New York and Santa Monica offices of Boies Schiller Flexner LLP. Mr. Agatston is admitted to practice in New York and California. He has been admitted in New York since 2016 and California since 2019. He earned JD from Columbia University, where he was a Harlan Fiske Stone Scholar and a member of the Columbia Business Law Review. Mr. Agatston obtained his bachelor's degree from University of Pennsylvania.

36. Mr. Agatston recently had a child and began his paternity leave on March 16, 2022. Therefore, for this motion and other issues arising after the Court's March 15, 2022 Order, I am working with another associate at MB, Murad Salim. Mr. Salim's standard hourly rate is $675 per hour. Prior to joining MB, Mr. Salim had a prestigious clerkship with the United States District Court for the Southern District of New York. He earned his JD from the University of Virginia School of Law, where he was an editor of the Virginia Journal of Social Policy and the Law and competed on the moot court team. After law school, Mr. Salim worked at the Dallas office of Locke Lord. In his second year of practice, he was part of a trial team that obtained a 7-figure jury verdict on behalf of its client, and defeated all of counterclaims against the same, in a complex partnership dispute. Mr. Salim is admitted to practice in Texas and California. He has been admitted in Texas since

2017 and California since 2021.

37. The attorneys were assisted by two experienced paralegals, Cindy Lumia and Kathryn Clark. Their standard rates are $325 per hour. We also received some paralegal support from Carole Conklin, whose hourly rate is $295 per hour.

38. I am familiar with the Los Angeles legal market and the hourly rates charged by other firms. The hourly rates charged by MB are reasonable and based upon the rates charged by attorneys with comparable skill, qualifications, and experience at comparable law firms in the Los Angeles market.

39. Our firm does high-end trial work. We are regularly opposite prestigious large firms, including, but not limited to, Gibson, Dunn & Crutcher, Latham & Watkins, Morgan Lewis, and Quinn Emanuel. The majority of our attorneys started their careers at big law firms, including Gibson, Dunn & Crutcher; Latham & Watkins, O'Melveny, Quinn Emanuel, Jones Day, Cooley, Dechert; Foley & Lardner, Cahill, and Irell & Manella. Our rates are generally less than what they charge. True and correct excerpts of fee applications for Kirkland & Ellis, Latham & Watkins, and Gibson, Dunn & Crutcher, reflecting the hourly rates of attorneys with comparable experience in Southern California, are attached hereto as **Exhibit F.**

40. MB did not charge Snap regular hourly rates in this matter. Instead, MB has provided Snap with a discounted hourly-rate structure for partners and associates. For example, while my regular hourly rate is $975 per hour (and was $950 per hour in 2021), MB charged Snap $695 per hour for my time in 2022 and $675 for my time in 2021. For Mr. Agatston, instead of charging Snap $625 per hour in 2021 and $675 per hour in 2022, which are his regular hourly rates, MB charged Snap $550 per hour in 2021 and $575 per hour in 2022 for his time. In my professional opinion and experience, MB's regular hourly rates are comparable, if not lower than, attorneys with similar experience in Southern California. The

discounted rate MB provided to Snap is lower than the market rate for the firm's services.

### B. The Amount Of Time That MB Spent On This Matter Is Reasonable

41. I have reviewed Miller Barondess's timekeeping records for this case, and the time referenced in these records reflects the time actually worked in connection with this matter. I have become very familiar with such records and the processes by which the firm creates and maintains them. In the regular course of business, Miller Barondess maintains records of time spent by individual attorneys and other professional with respect to each client matter. In recording their timekeeping entries, attorneys at Miller Barondess are required to specify the client and matter, the nature of the work performed, and the amount of time they expended on each designated task. For some matters, including this one, Miller Barondess attorneys are required to prepare a separate billing entry for each task.

42. The work performed by the attorneys and other professionals at MB can be categorized as follows:

- Reviewing Plaintiff's initial, pre-litigation correspondence to Snap in early 2021 about the fire at the property and preparing a response thereto;
- Reviewing the Lease, researching relevant legal authority, and generally conducting a factual investigation and inquiry into the merits;
- Reviewing the original Complaint and Plaintiff's early demand for mediation;
- Researching all causes of action in the Complaint and drafting a response to Plaintiff's early demand for mediation;
- Drafting meet and confer correspondence to Plaintiff regarding Snap's motion to dismiss;
- Engaging in the meet and confer process with opposing counsel;
- Drafting Snap's two motions to dismiss;
- Researching and drafting an opposition to Plaintiff's frivolous motion for sanctions;

- Handling the day-to-day tasks associated with the case, including communications with co-defendants' counsel and the client, and reviewing Court orders;

- Researching and drafting this fees motion and supporting documents.

43. Set forth in **Exhibit G** hereto are all bills sent by MB to Snap from the commencement of this matter through February 28, 2022, reflecting the billing entries of the professionals who worked on this case, as well as the discounted rates actually charged, in chronological order. This information is a true and accurate reflection of our timekeeping records at the discounted rates charged to Snap. In a very small number of instances, attorney-client privileged information is redacted as indicated. Not reflected in these bills is work performed by MB attorneys in March 2022 (because that bill has not yet been finalized or sent), including the initial drafting of this Motion, the finalization of Snap's opposition to Plaintiff's motion for sanctions, and the drafting of Snap's reply in support of its motion to dismiss the FAC.

44. In the interest of being conservative, Snap has elected to only seek the fees actually charged by MB in this matter. Accordingly, for completed bills as of February 28, 2022, based on discounted rates, Snap is seeking $32,012.00 less than full rates, reflecting a discount of 24.79%. Snap's counsel's lodestar at full rates and the actual fee request as of February 28, 2022 are summarized below:

| Professional | Hourly Rate | Hours Worked | Total Fee |
|---|---|---|---|
| **Amnon Siegel** | 950 | 48.4 | $ 45,980.00 |
| **Jessica Newman** | 625 | 3.3 | $ 2,062.00 |
| **Adam Agatston (2021)** | 625 | 106.6 | $ 66,625.00 |
| **Adam Agatston (2022)** | 675 | 16.4 | $ 11,070.00 |
| **Kathryn Clark** | 325 | 1 | $ 325.00 |
| **Cindy Lumia** | 325 | 2.2 | $ 715.00 |
| **Carole Conklin** | 295 | 8 | $ 2,360.00 |
| **Total Lodestar** | | 169.50 | $ 129,137.00 |
| **Actual Fee Request – Discounted Rate** | | | $ 97,125.00 |
| **Discount from Lodestar** | | | $ 32,012.00 (24.79%) |

45. In the month of March 2022, for which the bill has not yet been prepared or sent, counsel for Snap, as of the initial draft of this motion and supporting documents (not including final review and edits), has thus far performed work summarized in the following table:

| Professional | Hourly Rate | Hours Worked | Total Fee |
|---|---|---|---|
| **Amnon Siegel** | 950 | 9.8 | $ 9,310.00 |
| **Murad Salim** | 675 | 12 | $ 8,100.00 |
| **Adam Agatston** | 675 | 19.9 | $ 13,432.50 |
| **Cindy Lumia** | 325 | 0.8 | $ 260.00 |
| **Carole Conklin** | 295 | 3 | $ 885.00 |
| **Total Lodestar** | | 45.50 | **$ 31,987.50** |
| **Actual Fee Request – Discounted Rate** | | | **$ 26,274.50** |
| Discount from Lodestar | | | $ 5,713.00 (17.86%) |

46. Accordingly, Snap seeks a total of $97,125.00 for 169.50 hours of professional time, as of its last bill (February 2022), and $184.65 in costs, for a total of $97,309.65. This is below the lodestar at MB's standard hourly rates, which would reflect a total of $128,097 for the same 169.5 hours of professional time.

47. Snap seeks an additional $26,274.50 for time worked by its counsel in March 2022 (as of the initial draft of this motion and related papers), which has not yet been billed for 45.50 hours of professional time. This is below the lodestar at MB's standard rates, which would reflect a total of $31,987.50 for the same 45.50 hours of professional time.

48. The lodestar for all work performed by MB, including work performed in March 2022 (as of the initial draft of this motion and related papers), at MB's standard hourly rates, is $161,124.50 for a total of 215 hours of professional time. Snap instead seeks fees at the amount it was charged, reflecting discounted rates, for a total of $123,399.50 in fees. Thus, the total fee discount compared to MB's standard rates is $37,725.00 (23%).

49. Snap also seeks $12,460 in fees it anticipates incurring in connection with finalizing this fees motion, reviewing Plaintiff's opposition to the same, and

drafting its reply brief. This includes an additional 4 hours that I will spend reviewing and finalizing the moving papers, at a rate of $695 per hour ($2,780); an additional 4 hours by Mr. Salim assisting me with final revisions to these papers, at a rate of $575 per hour ($2,300); 8 hours spent by Mr. Salim reviewing Plaintiff's opposition briefing and drafting our reply briefing, at a rate of $575 per hour ($4,600); and an additional 4 hours that I will spend reviewing and finalizing the same, at a rate of $695 per hour ($2,780). At our standard hourly rates of $950 per hour and $675 per hour respectively, the anticipated fees would be $15,700. Thus, the estimated fees that Snap is actually seeking are $3,240 (20.64%) below the estimated lodestar. Snap assumes the Court will not hold a hearing on this motion.

50. Accordingly, Snap has incurred $123,399.50 in fees and $184.65 in costs for work up to the initial draft of this fees motion, plus I estimate that it will incur an additional $12,460 for finalizing this motion, including our reply brief. Thus, Snap seeks a total fee and costs award of $136,044.15.

**Meet and Confer on this Motion**

51. On March 21, 2022, I spoke with Plaintiff's new counsel, Matt Putterman, regarding Snap's intent to move for attorneys' fees. Upon his request, I provided him with the approximate amount of the total fees incurred by Snap through February 28, 2022 (i.e., $100,000). We were unable to reach a resolution on Snap's fees request, thus necessitating this motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 29th day of March, 2022, at Los Angeles, California.

                                           */s/ Amnon Z. Siegel*
                                           Amnon Z. Siegel

**INDEX OF EXHIBITS TO THE DECLARATION OF AMNON Z. SIEGEL**

| Exhibit No. | Description | Pg. No. |
|---|---|---|
| A. | Letter from A. Siegel to Schonbrun; Dated February 11, 2021 | 15-19 |
| B. | Plaintiff's Letter to Snap; Dated September 8, 2021 | 20-45 |
| C. | Letter from A. Siegel to Plaintiff's counsel; Dated September 30, 2021 | 46-57 |
| D. | Meet and confer letter from A. Siegel to Plaintiff's counsel; Dated October 13, 2021 | 58-64 |
| E. | Meet and confer letter from A. Siegel to Plaintiff's counsel; Dated November 30, 2021 | 65-73 |
| F. | Fee applications reflecting the hourly rates of attorneys with comparable experience in Southern California | 74-90 |
| G. | MB bills to Snap from commencement of matter through February 28, 2022 | 91-125 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400